## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

**UNIVERSITY OF WISCONSIN**
**HOSPITAL AND CLINICS AUTHORITY,**

     **Plaintiff,**       **Case No.: 3:14-CV-779**

**v.**

**AETNA LIFE INSURANCE COMPANY,**
**AETNA HEALTH AND LIFE INSURANCE**
**COMPANY, AETNA HEALTH INSURANCE**
**COMPANY, and DOES 1-4.**

     **Defendants.**

### DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendants Aetna Life Insurance Company ("Aetna"), Aetna Health and Life Insurance Company, and Aetna Health Insurance Company,[1] by its undersigned counsel, submit this Memorandum in Support of its Motion for Summary Judgment against the University of Wisconsin Hospitals and Clinics Authority (the "Hospital").

### <u>INTRODUCTION</u>

In this denial of benefits case, summary judgment is appropriate in favor of Aetna because: (1) the Hospital's state law claims are completely preempted by the Employee Retirement Income and Security Act of 1974 ("ERISA"); (2) the Hospital is prohibited from pursuing its claims under ERISA because the patient's health benefit plan contain an anti-

---

[1] Aetna Life Insurance Company provided the insurance coverage at dispute in this litigation and is responsible for the denial of benefits. (Defendants' Proposed Findings of Fact ("DPFF") ¶ 5). Aetna Health and Life Insurance Company and Aetna Health Insurance Company did not provide insurance benefits to K.B. and were not involved in the benefits determination for the Hospital's claim for the services provided to K.B. (Affidavit of Michael C. McNamara ¶¶ 4-5). Because Aetna Health and Life Insurance Company and Aetna Health Insurance Company were improperly included as defendants, summary judgment should be granted in their favor.

assignment clause; and (3) Aetna's denial of benefits on the claim for medical services provided by the Hospital to the patient was not arbitrary and capricious.

## FACTUAL BACKGROUND

As set forth more fully in Aetna's contemporaneously filed Proposed Findings of Fact in Support of its Motion for Summary Judgment, the Hospital initially filed this case in state court alleging state law claims for breach of contract, breach of implied contract, quasi contract and unjust enrichment, breach of the implied covenant of good faith, and interest under Wisconsin Statute § 628.46.  (DPFF ¶ 1).  Aetna removed the case to this Court because the Hospital's claims were preempted by § 502(a) of ERISA.  (DPFF ¶ 2).

In March 2014, Aetna provided insurance to K.B., an individual insured through her husband's employer, Transcat, Inc. (DPFF ¶ 5).  The terms and conditions of K.B.'s health insurance benefits are set forth in the Transcat, Inc. Booklet-Certificate (the "Booklet-Certificate") and Group Accident and Health Insurance Policy (the "Policy") (collectively the "Plan").  (DPFF ¶¶ 6, 16).  The Plan is an employee health benefits plan governed by ERISA. (DPFF ¶ 7).  Significantly, the Plan contains an anti-assignment clause, stating that "[c]overage may be assigned only with the written consent of **Aetna**."  (DPFF ¶ 15) (emphasis in original). Although the Hospital alleges that it "has a valid assignment from [Aetna's] insured [K.B.], and is asserting the right to recover benefits under the contract for health care coverage between [Aetna] and [K.B.]," (DPFF ¶ 10), Aetna did not provide written consent for K.B.'s attempted assignment of her right to benefits to the Hospital.  (DPFF ¶ 38).

K.B. underwent gastric bypass surgery at the Hospital on February 21, 2014 and was discharged on February 28, 2014.  (DPFF ¶¶ 18-19).  On March 5, 2014, K.B. was admitted to the Hospital's emergency department and underwent further surgery due to complications with

her procedure. (DPFF ¶¶ 20, 21). On March 6, 2014—one day after K.B. had been re-admitted to the Hospital and six days after K.B. was initially discharged—the Hospital contacted Aetna to obtain precertification to conduct additional surgery. (DPFF ¶ 22). Aetna denied the precertification request, explaining that it was a "possible duplicate request" and asking the Hospital to "please call Aetna for any readmissions within 7 days of previous inpatient stay." (DPFF ¶ 23). The Hospital did not respond to Aetna's precertification denial and in fact concedes that it did not notice the denial, but stated that it was "now acutely aware of this requirement and will be very diligent in following it going forward!" (DPFF ¶ 24).

Under the Plan, expenses are not covered if precertification is requested and denied. (DPFF ¶ 14). Because the Hospital's precertification request was denied, Aetna—who the Plan provides with discretionary authority in determining benefits eligibility—denied payment on the Hospital's claim for services, explaining that "[c]overage for these services has been denied due to failure to follow contractual notification requirements. The patient is not responsible for this amount." (DPFF ¶¶ 17, 25). Aetna reaffirmed its denial in response to the Hospital's appeals, explaining it "determined that the claim in reference has been processed correctly to deny the services as coverage for these services has been denied due to failure to follow Aetna contractual notification requirements." (DPFF ¶¶ 31, 37).

## STANDARD OF LAW

"A party that does not bear the burden of persuasion may move for summary judgment 'by 'showing' – that is, point out to the district court – that there is an absence of evidence to support the non-moving party's case.'" *Modrowski v. Pigatto*, 712 F.3d 1166, 1167 (7th Cir. 2013) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "If, after an adequate opportunity for discovery, 'the non-movant does not come forward with evidence that would

reasonably permit the finder of fact to find in her favor on a material question, then the court *must* enter summary judgment against her.'" *Id.* (citing *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994)) (emphasis in original).  "Speculation and conjecture are insufficient to defeat a motion for summary judgment." *Smock v. Nolan*, 361 F.3d 367, 370 (7th Cir. 2004).

Moreover, "[i]t is not the duty of the Court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying applicable evidence." *Meridian Fin. Advisors, Ltd. v. Pence*, 763 F. Supp. 2d 1046, 1055 (S.D. Ind. 2011).  "[W]here the question is whether a decision was arbitrary and capricious"—as is the case here—"'courts are limited to the information submitted to the plan's administrator.'" *Weatherall v. Reliastar Life Ins. Co.*, 398 F. Supp. 2d 918, 922 (W.D. Wis. 2005) (quoting *Perlman v. Swiss Bank Corp. Comprehensive Disability Prot. Plan*, 195 F.3d 975, 981-82 (7th Cir. 1999)).

## ANALYSIS

### I.      The Hospital's Claims are Preempted by ERISA

ERISA § 502(a)(1)(B) provides a cause of action for a beneficiary "to recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B). Under the *Davila* "two-part test for determining whether a state law claim falls within the scope of ERISA § 502(a) and should be recharacterized as a federal claim," *Conn. Gen. Life Ins. Co. v. Grand Ave. Surgical Ctr., Ltd.*, No. 13 C 4331, 2014 WL 151755, at *3 (N.D. Ill. Jan. 14, 2014), courts first look to whether the plaintiff, "at some point in time, could have brought his claim

under ERISA § 502(a)(1)(B)" and second, whether "there is no independent legal duty that is implicated by a defendant's actions." *Davila*, 542 U.S. at 210.

As this Court recognized at the February 11, 2015 hearing on Aetna's motion to dismiss, because the Hospital's claims are based on Aetna's obligations to C.B. pursuant to the terms of the Plan, the Hospital's state law causes of action are preempted by ERISA. (*See* Docket # 20). Because the Hospital's claims are completely preempted by ERISA, summary judgment should be granted in favor of Aetna. *DeBartolo v. Plano Molding Co.*, No. 01 C 8147, 2002 WL 31027963, at *2 (N.D. Ill. Sept. 10, 2002) (granting defendant's motion for summary judgment because plaintiff's estoppel and misrepresentation claims were preempted by ERISA); *see Miller v. Magnetek*, 334 F. Supp. 2d 1104, 1110 (E.D. Wis. 2004) (granting defendant's motion to dismiss or, in the alternative, for summary judgment on plaintiff's state law bad faith claim because the claim was preempted by ERISA); *Tesch v. Gen. Motors Corp.*, 685 F. Supp. 1084, 1086 (E.D. Wis. 1988) (granting defendant's motion for summary judgment because plaintiff's claims were completely preempted by ERISA).[2]

## II.     The Plan's Restriction on Assignment Prohibits the Hospital From Pursuing Its ERISA Claims

Although the Hospital's claims are preempted by ERISA, the Plan's restriction on assignments prohibits the Hospital from pursuing its claims. Specifically, the Plan states that "[c]overage may be assigned only with the written consent of **Aetna**." (DPFF ¶ 15) (emphasis in original). "The general rule under ERISA is that health providers have standing to assert claims as assignees to 'collect' health benefits." *DeBartolo v. Health & Welfare Dept. of Const. & Gen. Laborers' Dist. Council of Chicago & Vicinity*, No. 1:09-cv-0039, 2010 WL 3273922, at *3

---

[2] However, if this Court finds that ERISA preemption is not a basis summary judgment, the Court should nevertheless hold that because the Hospital's claims are completely preempted, ERISA controls the outcome of this litigation.

(N.D. Ill. Aug. 17, 2010) (citing *Kennedy*, 924 F.2d at 700 (7th Cir. 1991)).  "However, a health care provider's right to recover under ERISA as an assignee depends on the health care provider having a valid and enforceable assignment agreement, and an assignment is not valid and enforceable if the plan contains an anti-assignment provision." *Id.* (citing *Plumb v. Fluid Pump Serv., Inc.*, 124 F.3d 849, 863 (7th Cir. 1997); *DeBartolo v. Blue Cross/Blue Shield of Ill.*, No. 01 C 5940, 2001 WL 1403012, at *5 (N.D. Ill. Nov. 9 2001)).

The Seventh Circuit has explained that "[b]ecause ERISA instructs courts to enforce strictly the terms of plans, "an assignee cannot *collect* [i.e., succeed on the merits of an ERISA denial of benefits claim] unless he establishes that the assignment comports with the plan." *Kennedy v. Conn. Gen. Life Ins. Co.*, 924 F.2d 698, 700 (7th Cir. 1991) (emphasis in original) (citing *Central States, Se & Sw Areas Pension Fund v. Gerber Truck Srv. Inc.*, 870 F.2d 1148 (7th Cir. 1989) (in banc) (concluding that under ERISA "a plan may enforce the writings according to their terms")); *Morlan v. Universal Guaranty Life Ins. Co.*, 298 F.3d 609, 615 (7th Cir. 2002) ("claims for welfare benefits . . . are assignable, provided of course that the ERISA plan itself permits assignment, assignability being a matter of freedom of contract in the absence of a statutory bar.").  Because ERISA requires strict compliance with the terms of the plan, courts in this circuit have routinely enforced a plan's anti-assignment clauses to hold that a provider is precluded from pursuing its denial of benefits claim.  *Health & Welfare Dept.*, 2010 WL 3273922 at *4 (holding that because "the language of the Plan operates to prohibit assignments of benefits of all types of claims" that the provider lacked standing under ERISA even though the plan had made direct payment to the provider).

For instance, in *Neurological Res., P.C. v. Anthem Ins. Co.*, 61 F. Supp. 2d 840, 844-46 (S.D. Ind. 1999), the plaintiff filed state law claims against the insurance plan for failing to pay

for health care services provided to its members.  *Id.* at 844.  The insurance plan removed the case due to ERISA preemption and moved for summary judgment on the grounds that the relevant ERISA plans contained anti-assignment clauses.  *Id.* at 844-45.  In granting the insurance plan's motion for summary judgment on the claims arising out of policies with anti-assignment clauses, the court explained that "if [plaintiff] can sue at all on some of the claims at issue in this case, it is through assignments, and **Kennedy *instructs district courts to allow such claims only where the assignments comply strictly with the terms of the applicable plans***."  *Id.* at 846.  (emphasis added).

Here, the Hospital's claims are wholly dependent upon K.B.'s purported assignment and Aetna's purported breach of the Plan.  (DPFF ¶¶ 9-10).  Consequently, "if [the Hospital] can sue at all . . . it is through assignments."  *Id.*  Because the Hospital's claims are dependent upon an ineffective assignment that is precluded by the Plan, the Hospital cannot pursue its ERISA claims.  (DPFF ¶¶ 15, 38).  *See OSF Healthcare Sys. v. Weatherford*, No. 10-1400, 2012 WL 996900, at *5-6 (C.D. Ill. Mar. 23, 2012) (holding that plaintiff was barred from pursuing its ERISA claims because the plan contained an anti-assignment even though the plan contained provision allowing for direct payment to provider); *Zhou v. Guardian Life Ins. Co. of Am.*, No. 01C4816, 2001 WL 1631868, at *2 (N.D. Ill. Dec. 17, 2001) (dismissing plaintiff's ERISA claims because the plan contained an anti-assignment clause and rejecting plaintiff's argument that defendant waived enforcement of the anti-assignment by making payments directly to the provider); *see Blue Cross/Blue Shield of Ill.*, 2001 WL 1403012, at *5 (holding that plaintiff lacked standing to pursue ERISA claims due to plan's anti-assignment clause and explaining that "[a] health care provider's right to recover under ERISA as an assignee . . . depends on the health care provider having a valid, enforceable assignment agreement.").   Accordingly, because the

7

Plan's anti-assignment clause precludes the Hospital from pursuing its claims based on a denial of benefits, summary judgment should be granted in favor of Aetna.

### III.   Aetna's Denial of Benefits Was Not Arbitrary and Capricious

#### A.   *The Arbitrary and Capricious Standard Applies*

Even if this Court were to find that the Plan's anti-assignment clause did not prevent the Hospital from pursuing its claim under ERISA 502(a)(1)(B), summary judgment should be granted in favor of Aetna because its denial of benefits was not arbitrary and capricious.  In an ERISA determination of benefits case, if "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or construe the terms of the plan," an administrator's decision to deny benefits is reviewed under the arbitrary and capricious standard. *Edelman v. Roofers' Pension Fund*, No. 12 C 8221, 2014 WL 1660625, at *5 (N.D. Ill. Apr. 24, 2014) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).  Here, the Plan grants Aetna discretionary authority, expressly providing that Aetna has:

> [C]omplete authority to review all denied claims for benefits under this Policy. This includes, but is not limited to, the denial of certification of the medical necessity of hospital or medical treatment. In exercising such fiduciary responsibility, [Aetna] shall have discretionary authority to determine whether and to what extent eligible employees and beneficiaries are entitled to benefits and to construe any disputed or doubtful terms under this Policy, the Certificate or any other document incorporated herein. [Aetna] shall be deemed to have properly exercised such authority unless [Aetna] abuse[s] [its] discretion by acting arbitrarily and capriciously.

(DPFF ¶ 17).

"Under the arbitrary and capricious standard, [the court does] not ask whether the administrator reached the correct conclusion or even whether it relied on proper authority." *Kobs v. United Wis. Ins. Co.*, 400 F.3d 1036, 1039 (7th Cir. 2005).  Instead, the court looks only to "whether the administrator's decision was completely unreasonable." *Manny v. Cent. States,*

*Se. & Sw. Areas Pension and Health and Welfare Funds*, 388 F.3d 241, 243 (7th Cir. 2004). Consequently, a court will uphold an administrator's decision "'if (1) it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, (2) the decision is based on a reasonable explanation of relevant plan documents, ***or*** (3) the administrator has based its decision on a consideration of the relevant factors that encompass important aspects of the problem.'" *Jones v. WEA Ins. Corp.*, No. 13-cv-741-wmc, 2014 U.S. Dist. LEXIS 143631, at *26 (W.D. Wis. Oct. 7, 2014) (quoting *Militello v. Cent. States, Se. & Sw. Areas Pension Fund*, 360 F.3d 681, 686 (7th Cir. 2004)) (emphasis added).  Because Aetna's determination satisfies each of the three options, summary judgment should be granted in its favor.

### B. Aetna's Denial of Benefits Was Based on a Reasonable Explanation of the Evidence, Relevant Plan Documents, and a Consideration of the Relevant Factors

The Hospital cannot meet its burden of showing that Aetna acted arbitrarily and capriciously in denying the claims for services provided to K.B.  Instead, the evidence demonstrates that Aetna: (1) provided a reasoned explanation based on the evidence; (2) the decision was based on the relevant plan documents; and (3) Aetna considered the relevant factors in making its determination.

The Hospital sought precertification to provide services to K.B. on March 6, 2015—six days after K.B. had previously been discharged for her gastric bypass procedure.  (DPFF ¶¶19, 22).  Aetna denied the Hospital's request for precertification, explaining that it was a "possible duplicate request" and asking the Hospital to "please call Aetna for any readmissions within 7 days of previous inpatient stay."  (DPFF ¶ 23).  The Hospital admits that it failed to respond to Aetna's precertification denial, but implicitly asked for its omission to be overlooked stating that it is "now acutely aware of this requirement and will be very diligent in following it going forward!"  (DPFF ¶ 24).

Under the Plan, expenses are not covered if precertification is requested and denied. (DPFF ¶ 14). Here, the Hospital's request for precertification was denied, and therefore, Aetna—in accordance with the plain language of the Plan—denied payment on the Hospital's claim, stating "[c]overage for these services has been denied due to failure to follow contractual notification requirements. The patient is not responsible for this amount." (DPFF ¶ 25). Consequently, Aetna's denial of benefits was based off the fact that: (1) Aetna had rejected the Hospital's request for precertification and the Hospital failed to dispute Aetna's denial; and (2) the Plan expressly provides that expenses are not covered if precertification is denied. As such, Aetna's denial of benefits cannot be arbitrary and capricious. *See Renaldi v. Sears Roebuck & Co.*, No. 97 C 6057, 2001 WL 290372, at *12 (N.D. Ill. Mar. 21, 2001) (affirming administrator's interpretation of plan's precertification provisions and explaining that under the arbitrary and capricious standard, the plaintiff "must show that the [administrator] not only wrongly interpreted and applied the Plan's provisions, but that his interpretation and application were downright unreasonable.") (internal quotation and citation omitted); *Bushman v. State Mut. Life Assur. Co. of Am.*, 915 F. Supp. 945, 953-54 (N.D. Ill. 1996) (affirming administrator's precertification denial because the plan afforded it broad discretion in interpreting its provisions and explaining that "where a claim administrator has equally plausible but conflicting facts as to whether a particular claim is entitled to coverage, it is not arbitrary and capricious for the claim administrator to conclude that the claim is not covered.").

Furthermore, Aetna's denials of Plaintiff's appeals were based off reasonable interpretations of the Plan and took the relevant factors into consideration in making its determination. In its first appeal, the Hospital insisted that despite Aetna's denial of precertification, the claim should be paid because the services were medically necessary. (DPFF

¶ 29).  The Hospital's argument is misplaced as Aetna's precertification denial was made irrespective of whether the procedure was medical necessary.  (DPFF ¶ 23).  As explained above, the Plan language is clear and unequivocal that expenses are not covered if precertification is denied.  (DPFF ¶ 14).  Because precertification was denied, Aetna's determination "that the claim in reference has been processed correctly to deny the services as coverage for these services has been denied due to failure to follow Aetna contractual notification requirements" was based off consideration of the relevant factors.  (DPFF ¶¶ 31, 37).  Accordingly, Aetna's interpretation of the plan documents is reasonable.  *Hightshue v. AIG Life Ins. Co.*, 135 F.3d 1144, 1149 (7th Cir. 1998) (affirming administrator's denial of benefits, explaining that where the plan provides an administrator with discretionary authority, the court should "accept any reasonable interpretation which [the administrator] gives a plan terms."); *Santucci v. Hyatt Corp.*, 955 F. Supp. 927, 929 (N.D. Ill. 1997) (holding that administrator's denial of precertification was not arbitrary and capricious because it was based on a reasonable construction of the relevant plan provisions).

Furthermore, in its second appeal the Hospital reiterated its medical necessity argument and also mistakenly argued that Aetna denied the precertification because it was not received in a timely fashion.  (DPFF ¶ 35).  The Hospital's contention that Aetna denied precertification because it was not received in a timely fashion is unfounded and contradicted by: (1) Aetna's precertification denial letter, which indicates that precertification was denied because it was a possible duplicate request; and (2) the Hospital's first appeal cover letter, which admits that precertification was denied because it was a possible duplicate request.  (DPFF ¶¶ 24, 28-30, 36).  Put simply, the timing of the Hospital's request was irrelevant for purposes of Aetna's precertification denial, and accordingly, Aetna issued a second appeal denial letter explaining

that payment was denied because the Hospital failed to follow the "contractual notification requirements."  (DPFF ¶ 37).  *See Rice v. ADP TotalSource, Inc.*, 936 F. Supp. 2d 951, 966-67 (N.D. Ill. 2013) (affirming administrator's denial under arbitrary and capricious standard because the plan contained "broad language governing" the relevant provision, and the administrator's interpretation of that provision was reasonable).

Because Aetna's denial of payment on the Hospital's claim is based on a reasonable interpretation of the Plan's precertification provision, summary judgment should be granted in Aetna's favor.  *See Hess v. Reg-Ellen Machine Tool Corp.*, 423 F.3d 653, 661-62 (7th Cir. 2005) (holding that plan administrator's denial of participant's request was not arbitrary and capricious and explaining that administrator must be afforded broad discretion in interpreting the plan's terms).

**IV.     The Plan Is Entitled to Recover its Attorney's Fees and Costs**

ERISA section 502(g)(1) provides that "[i]n any action under this title . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."  29 U.S.C. § 1132(g)(1).  In *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 (2010), the Supreme Court interpreted ERISA's fee shifting provision, holding that a court may award fees under ERISA is the party has achieved "some degree of success on the merits."  The Seventh Circuit applies either a five-factor test or a substantially justified test in determining whether an award of attorney's fees is warranted in an ERISA case.  *See Debartolo v. Health & Welfare Dept. of the Const. and Gen. Laborers' Dist. Council of Chicago & Vicinity*, No. 09 CV 0039, 2011 WL 1131110, at *1-2 (N.D. Ill. Mar. 28, 2011); *Temme v. Bemis Co., Inc.*, 762 F.3d 544, 550 (7th Cir. 2014) (explaining that the Seventh Circuit has "affirmed the use of both tests post-*Hardt*.").

The Seventh Circuit has explained the two tests as follows:

> The first test looks at the following five factors: 1) the degree of the offending parties' culpability or bad faith; 2) the degree of the ability of the offending parties to satisfy personally an award of attorney's fees; 3) whether or not an award of attorney's fees against the offending parties would deter other persons acting under similar circumstances; 4) the amount of benefit conferred on members of the pension plan as a whole; and 5) the relative merits of the parties' positions. The second test looks to whether or not the losing party's position was substantially justified. In any event, both tests essentially ask the same question: was the losing party's position substantially justified and taken in good faith, or was that party simply out to harass its opponent? In determining whether the losing party's position was 'substantially justified,' the Supreme Court has stated that a party's position is justified to a degree that could satisfy a reasonable person.

*Kolbe & Kolbe Health & Welfare Benefit Plan v. Medical College of Wis., Inc.*, 657 F.3d 496, 505-06 (7th Cir. 2011).

In the instant dispute, attorney's fees and costs are warranted under either test; however, because the five-factor test is used to "structure or implement, rather than to contradict" the substantially justified test, the former will be used to explain why the Plan should be awarded its attorney's fees and costs. *Lowe v. McGraw-Hill Cos, Inc.*, 361 F.3d 335, 339 (7th Cir. 2004). As a preliminary matter, in the event this Court grants summary judgment in favor of Aetna, it indisputably has had "some degree of success on the merits." *Hardt*, 506 U.S. at 255 (explaining that the "some success" standard is satisfied if "the court can fairly call the outcome of the litigation some success.").

Turning to the merits, "[f]actors 1 and 5 concern the issues of substantial justification and good faith . . . ." *DeBartolo*, 2011 WL 1131110, at *5. "The absence of good faith does not require a subjective finding of bad faith, but rather describes a party who pursues a position without a solid basis." *Anderson, Trustee on Behalf of Painters' Dist. Council No. 30 Health & Welfare Fund v. Dergance*, No. 08 C 2522, 2009 WL 3151172, at *1 (N.D. Ill. Sept. 22, 2009)

13

(internal quotation and citation omitted).  In the instant dispute, the Hospital's claims lack a solid basis as Aetna's denial of benefits was compelled by the plain language of the Plan.  Aetna denied precertification on the Hospital's claim because it was a possible duplicate request and instructed the Hospital to contact Aetna, a request the Hospital ignored.  (DPFF ¶¶ 23-24).  Under the Plan, expenses are not covered if precertification is denied.  (DPFF ¶ 14).  As such, Aetna's denial of benefits was mandated by the Plan and the Hospital lacked a solid basis for challenging Aetna's interpretation of the Plan.  In its appeal letters and amended complaint, the Hospital attempts to raise arguments that Aetna denied precertification as untimely and that the procedures were medically necessary.  (DPFF ¶¶ 29-30, 35-36).  These arguments are nonstarters as timeliness was irrelevant to Aetna's precertification determination and the issue of whether the procedures were medically necessary was not considered.  (DPFF ¶ 24).  Because the Hospital lacked a solid basis for challenging Aetna's denial of precertification and instead has resorted to fabricating Aetna's reason for denial, Factors 1 and 5 favor Aetna.  *Lundsten v. Creative Cmty. Living Servs., Inc. Long Term Disability Plan*, No. 12-c-108, 2015 WL 1143114, at *2-3 (E.D. Wis. Mar. 13, 2015) (holding that defendant was entitled to award of attorney's fees under § 1132(g)(1) because plaintiff's contention was without factual or legal support).

Factor 2 looks to the offending party's ability to support the award.  Here, the Hospital could not, in good faith, contend that it would be unable to support the award.  Unlike other ERISA cases where the claims are being pursued by an ERISA plan's member and there is a possibility that the imposition of attorney's fees would be overly burdensome, these concerns are not present in the instant dispute.

Factor 3 looks to whether the award of fees would deter other persons acting under similar circumstances.  This factor favors Aetna as the Hospital has filed more than a dozen

14

copycat cases within the past year against Aetna and plans in which Aetna is the claims administrator and continues to regularly file these despite their lack of factual and legal support.[3] Because "[a]warding fees could possibly serve as a deterrent against such conduct by [the Hospital] or others in similar circumstances" factor 3 favors the Plan. *DeBartolo*, 2011 WL 1131110, at *6.

Factor 4, which analyzes the benefit conferred on members of the Plan, favors an award of attorney's fees and costs because these fees and costs will be used to benefit the other members of the Plan. *See id.* (citing *Contilli v. Local 705, Int'l Broth. Of Teamsters Pension Fund*, No. 05 C 0080, 2007 WL 2973835, at *3 (N.D. Ill. Oct. 11, 2007) (awarding fees because "[t]he fees recovered would be made available to pay the benefits of other members, whereas the denial of attorneys' fees would case a depletion of those same funds"); *Dergance*, No. 08 C 2522, 2009 WL 3151172, at *2 ("[A]ll plan participants benefit if the Fund is able to recover the expenses incurred during litigation.").  Accordingly, Aetna should be awarded its attorney's fees and costs arising out of this litigation.

**V.    The Hospital's Claims Should be Remanded to the Claims Administrator in the Event They Prevail on Any of Their Claims**

In the event this Court finds that the Hospital has prevailed on its claim, the appropriate remedy is to remand this case for further proceedings before Aetna as there has been no determination as to whether the Hospital's claims for services provided to K.B. were medically necessary or benefits were otherwise appropriate.  As the Seventh Circuit has explained, "[a]n award of benefits [in an ERISA case] is appropriate only where evidence is 'so clear cut that it would be unreasonable for the plan administrator to deny the application for benefits on any

---

[3] The current pending actions filed in the Western District of Wisconsin by the Hospital against Aetna or a plan in which Aetna is a the claims administrator include case numbers: 3:14-cv-805; 3:14-cv-823; 3:14-cv-880; 3:14-cv-882; 3:15-cv-240; 3:15-cv-280; 3:15-cv-281; 3:15-cv-282; 3:15-cv-283; 3:15-cv-284; 3:15-cv-285; 3:15-cv-286; 3:15-cv-412; 3:15-cv-414, 3:15-cv-415, and 3:15-cv-416.

ground.'"  *Kough v. Teamsters' Local 301 Pension Plan*, 437 F. App'x 483, 488 (7th Cir. 2011)

(quoting *Love v. Nat'l City Corp. Welfare Benefits Plan*, 574 F.3d 392, 398 (7th Cir. 2009)).

Because there has been no medical necessity determination, it is unclear from the record as to

whether the Hospital is entitled to an award of benefits outright and remand is the appropriate

remedy.  *See Love*, 574 F.3d at 398 (remanding for further consideration after holding that

decision to terminate benefits was arbitrary and capricious); *Leger v. Tribune Co. Long Term

Disability Ben. Plan*, 557 F.3d 823, 835 (7th Cir. 2009) (same); *Holzmeyer v. Walgreen Income

Protection Plan for Pharmacists and Registered Nurses*, 44 F. Supp. 3d 821, 846 (S.D. Ind.

2014) (remanding case for further proceedings and explaining that "[r]are indeed is a case whose

record contains such powerfully persuasive evidence warranting the court to short-circuit the

usual decision-making process vesting discretion in the claims administrator . . . .") (internal

quotation and citation omitted).

## **CONCLUSION**

For the reasons stated herein, Aetna respectfully requests that this Court enter an order

granting summary judgment in its favor in its entirety, and awarding Aetna such other and

further relief that this Court deems just and equitable, including, but not limited to, an award of

its reasonable attorneys' fees and costs.

Dated this 17th day of July, 2015.                    Respectfully submitted,

                                                      Aetna Life Insurance Company, Aetna
                                                      Health and Life Insurance Company, and
                                                      Aetna Health Insurance Company

                                                      By: */s/ Jeffrey C. Clark*_____
                                                            One of their attorneys

**GODFREY & KAHN S.C.**                               **MCGUIREWOODS LLP**
Todd G. Smith                                         Jeffrey C. Clark
tsmith@gklaw.com                                      jclark@mcguirewoods.com

16

Mark W. Hancock
mhancock@gklaw.com
One East Main Street
Suite 500
Madison, WI 53701-2719
P: 608-257-3911
F: 608-257-0609

Brett W. Barnett
bbarnett@mcguirewoods.com
77 West Wacker Drive
Suite 4100
Chicago, IL 60601-1818
P: 312-849-8123
F: 312-698-4543

68949637_2